AO 108 (Rev. 06/09) Application for a Warrant to Seize Property Subject to Forfeiture

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the Seizure of )
*(Briefly describe the property to be seized)* )
)  Case No.
2014 Honda Accord, Ohio License Plate HOC5487, VIN )
1HGCR2F37EA137231, with All Attachments Thereon )
)

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the __Southern__ District of __Ohio__ is subject to forfeiture to the United States of America under __21__ U.S.C. § __881(a) and 853(a)__ *(describe the property)*:

2014 Honda Accord, Ohio License Plate HOC5487, VIN 1HGCR2F37EA137231, with All Attachments Thereon.

The application is based on these facts:

See Affidavit which attached hereto and incorporated herein.

☑ Continued on the attached sheet.

_____
*Applicant's signature*

Jason M. O'Brien, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2/19/20

_____
*Judge's signature*

City and state: Cincinnati, Ohio

Karen L. Litkovitz, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEIZURE WARRANT

I, Jason M. O'Brien, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Task Force Officer with the Federal Bureau of Investigation (FBI), and have been since September 2011. I am also a Cincinnati Police Officer and have been since August 2002. I have conducted investigations into criminal enterprises, narcotics investigations, organized crime, and violent crimes to include the unlawful possession, possession with the intent to distribute, and actual distribution of controlled substances, as well as the associated conspiracies in violation of Title 21, United States Code, Sections 841(a)(1) and 846. Your affiant has also participated in the execution of federal search warrants and federal arrest warrants in relation to these investigations. Additionally, your affiant has participated in the installation and monitoring of tracking devices for vehicles in order to determine the whereabouts of believed drug traffickers and their illicit merchandise. I have training and experience in the means by which drug traffickers derive, launder, and conceal their profits from drug trafficking; the use of assets to facilitate unlawful drug trafficking activity; and the law permitting the forfeiture to the United States of assets purchased with drug proceeds or assets used or intended to be used to facilitate the drug violations.

2. Your affiant has also been involved with the administrative duties and monitoring responsibilities of Title III wire intercepts and analysis of pen registers related to narcotics and gang investigations. Your affiant is familiar with methods of concealing the whereabouts of illegal drugs, the methods used to keep law enforcement officers from finding evidence of drug trafficking operations, and the methods used to prevent others unfamiliar with criminal conduct from observing things indicative of drug trafficking. Your affiant is also familiar with the paranoia

surrounding most drug traffickers and the common ways in which wholesale drug distributors attempt to conceal their assets, their purchases, and other financial dealings that could be traced to them.

3. During the course of my law enforcement career, I have conducted and participated in the investigation of numerous criminal offenses, including those involved in the current investigation. I have participated in illicit drug trafficking investigations, violent crimes investigations, and gangs and criminal enterprise investigations, ranging from street level dealers to major drug suppliers. These investigations have also included the unlawful importation, possession with intent to distribute and distribution of illegal substances, the related money laundering instruments, the conducting of monetary transactions involving the proceeds of specified unlawful activities, and conspiracies associated with criminal narcotics offenses. These investigations during my career, which have resulted in the seizure of narcotics, arrests of suspects, their prosecution, and conviction, have involved: the use of confidential informants; the analysis of pen registers, trap and trace, and toll records; physical surveillances; electronic surveillances to include the use of poll cameras and vehicle cameras; and the execution of search and seizure warrants.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this matter.

## PURPOSE OF AFFIDAVIT

## PROPERTY TO BE SEIZED FOR FORFEITURE

5. This Affidavit is made in support of an application for a civil-criminal seizure warrant, pursuant to 18 U.S.C. § 981(b) (seizure of property for civil forfeiture as incorporated by

21 U.S.C. § 881(b)) and 21 U.S.C. § 853(f) (seizure of property for criminal forfeiture), for the following vehicles ("subject property"):

    a.    2011 Dodge Durango, Ohio license plate HQV6767, VIN: 1D4RE2GG9BC677236, with all attachments thereon;

    b.    2014 Honda Accord, Ohio license plate HOC5487, VIN: 1HGCR2F37EA137231, with all attachments thereon; and

    c.    2012 Honda Accord, Ohio license plate GQE7158, VIN: 1HGCP3F8XCA033904, with all attachments thereon.

6. For the reasons stated herein, there is probable cause to believe that the subject property is forfeitable to the United States, pursuant to 21 U.S.C. § 881(a)(4)(civil), 21 U.S.C. § 881(a)(6)(civil), and/or 21 U.S.C. § 853(a) (criminal), as property constituting, or derived from, proceeds obtained, directly or indirectly, as the result of one or more violations of 21 U.S.C. §§ 841 and 846; and/or as property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of such violations.

## INVESTIGATION BACKGROUND

7. Since 2017, the Cincinnati Police Department has been investigating a Drug Trafficking Organization (hereinafter DTO) led by Kenny HARVEY aka SK. Multiple confidential informants and confidential witnesses have reported that HARVEY is selling kilogram quantities of heroin, fentanyl, methamphetamine and marijuana. Through multiple confidential informant interviews, proffer interviews, cooperating defendant interviews, and telephone toll analysis, investigators have determined that HARVEY uses Corry HOWARD, Andre STEELE, Lachell JONES among several others to sell narcotics on his behalf. HARVEY uses numerous methods to buffer and insulate himself from law enforcement, such as, frequently switching telephones and telephone numbers, frequently switching vehicles, using vehicles registered and residences registered in other individual's names.

3

8. Throughout the course of the Cincinnati Police Department's investigation, law enforcement has conducted several seizures and/or arrests related to HARVEY and HARVEY's DTO, which included the seizure of narcotics, the arrests of multiple individuals for possession of narcotics and/or trafficking drugs, and cash seizures.

9. In December 2018, the Cincinnati FBI opened an investigation into the All State Violent Crime Organization, which was being led by Benwan EDWARDS and Marqui CONLEY in Middletown, Ohio. As a result of that investigation, on April 8, 2019, the Honorable Timothy S. Black, United States District Court Judge approved the interception of wire communications to and from a phone used by Benwan EDWARDS. Throughout the course of those interceptions, investigators intercepted numerous conversations referencing the sale of narcotics.

10. On April 17, 2019, investigators intercepted a call between EDWARDS and Michael BOYDEN. BOYDEN is a close associate of HARVEY. During the call, BOYDEN put HARVEY on the phone. EDWARDS was interested in purchasing narcotics from HARVEY. HARVEY offered to sell EDWARDS heroin/fentanyl mixture, methamphetamine and marijuana. HARVEY and BOYDEN instructed EDWARDS to meet them in Cincinnati, Ohio. Investigators were able to follow EDWARDS and his associate Marqui CONLEY to 1214 Drott Avenue in Price Hill, Cincinnati, Ohio, where they met with HARVEY and BOYDEN. 1214 Drott was formerly used by HARVEY as a narcotics distribution and storage location. EDWARDS and CONLEY met with HARVEY and BOYDEN for approximately two and a half hours. Based on the calls intercepted after the meeting, investigators do not believe EDWARDS purchased any narcotics on April 17, 2019.

11. On May 2, 2019, EDWARDS and CONLEY were charged in a multi-count Federal Complaint for Conspiracy to Possess and Possession with Intent to Distribute a Controlled

Substance. On May 6, 2019, EDWARDS was arrested on those charges. During the interview and after being advised of his *Miranda* rights, EDWARDS was reminded of the above-described intercepted call and trip to Cincinnati. EDWARDS stated that he and CONLEY travelled to Cincinnati, Ohio, in an attempt to meet a new source of supply. EDWARDS confirmed that he and CONLEY did not purchase any narcotics because the prices were too high. EDWARDS was not asked specific questions related to HARVEY or BOYDEN because investigators did not want EDWARDS to know that there was a current investigation targeting HARVEY. However, investigators believe based on the above-described interception, the physical surveillance, and statement by EDWARDS that EDWARDS met with HARVEY at 1214 Drott to discuss HARVEY as a potential new narcotics supplier for EDWARDS.

12. A Confidential Human Source (hereinafter CHS1) has been providing information to the FBI and CPD since May of 2018. CHS1 is providing information for case consideration and has provided details, which law enforcement officers have vetted as reliable, concerning drug trafficking offenses related to HARVEY's DTO. This information includes cell phone numbers, vehicles, narcotics storage locations, and identification of other members of the DTO. CHS1 has thus established his/her reliability to my satisfaction.

13. CHS1 stated that Kenny HARVEY is a large scale narcotics trafficker. CHS1 stated that he/she has routinely observed HARVEY in possession of large amounts of narcotics, including fentanyl, "Molly," ecstasy, and marijuana. CHS1 stated that HARVEY owns and/or maintains several residences in the Cincinnati area that he uses as "stash houses." CHS1 stated that he has observed HARVEY in possession of narcotics at these "stash houses."

14. CHS1 stated that HARVEY has 5-6 different phones, all of which are iPhones. CHS1 stated that HARVEY frequently uses Apple Facetime to set up the narcotics transactions.

5

CHS1 stated that HARVEY uses Facetime to limit his exposure to law enforcement based on HARVEY's belief that Facetime is encrypted and law enforcement is unable to intercept these communications. CHS1 stated that HARVEY often uses others to conduct the drug transactions on his behalf. CHS1 also stated that HARVEY will occasionally use Uber to drive him to conduct narcotics transactions.

15. Since May 2019, CHS1 has made several controlled narcotics purchases from HARVEY at the direction of investigators. Some of these controlled purchases were conducted by HARVEY himself while others HARVEY sent another subject to sell the narcotics on his behalf. During these controlled purchases, HARVEY has used several different vehicles. Investigators have obtained search warrants for the installation of a covert Global Positioning System (GPS) on multiple vehicles being utilized by HARVEY.

16. On November 22, 2019, the Honorable Alan Triggs, Hamilton County Municipal Court Judge signed a search warrant for 3363 Queen City Ave #11. 3363 Queen City Ave #11 is the residence of Lachell JONES[1]. Prior to the execution of the warrant, JONES was stopped exiting the residence. JONES was read her *Miranda* rights, and she acknowledged that she understood her rights. JONES stated that there was a large amount of drugs in her residence. She stated that she was storing these drugs for "Fat Mike" and "Fat Boy." "Fat Boy" is a known nickname for Kenny HARVEY. JONES positively identified a photograph of HARVEY as the subject she knows as "Fat Boy." JONES stated that HARVEY pays her to store the drugs at her residence. Furthermore, JONES stated that HARVEY pays her to meet his drug customers on his behalf. The resulting search of JONES' residence found approximately 1.4 kilograms of fentanyl

---

[1] JONES is a known member of the DTO. JONES was identified by investigators during multiple controlled narcotics purchases with CHS1 in which HARVEY arranged for JONES to meet CHS1 on HARVEY's behalf.

6

mixture, 520 grams of methamphetamine, 436 grams of heroin, 321 grams of cocaine and two firearms.

## SUMMARY OF PROBABLE CAUSE FOR SEIZURE

17. Throughout the course of the investigation, HARVEY has been observed driving multiple vehicles. As stated above, since May 2019, CHS1 has made several controlled narcotics purchases from HARVEY at the direction of investigators. During these controlled purchases, HARVEY has utilized multiple vehicles in which to conduct these transactions.

18. In late June of 2019, investigators used CHS1 to conduct a controlled purchase from HARVEY. CHS1 made a recorded Facetime call to HARVEY. Kenny Harvey agreed to sell CHS1 an amount of fentanyl. The CHS was provided with recorded U.S. currency to be used for the purchase of fentanyl. Shortly after the Facetime call, investigators observed HARVEY pull out of the garage of his residence at 5048 Mt. Alverno Rd. driving a 2014 Honda Accord bearing Ohio license HOC5487. HARVEY was observed driving the 2014 Accord as he arrived at the meeting location with CHS1 to conduct the transaction. CHS1 then purchased fentanyl directly from HARVEY at the location. A short time later, HARVEY was observed leaving the location in the 2014 Honda Accord.

19. In early July of 2019, investigators used CHS1 to conduct a controlled purchase from HARVEY. CHS1 made a recorded Facetime call to HARVEY. HARVEY agreed to sell CHS1 an amount of fentanyl. The CHS1 was provided with recorded U.S. currency to be used for the purchase of fentanyl. While the CHS was waiting on HARVEY at the meeting location, investigators observed HARVEY driving a silver 2011 Dodge Durango, bearing Ohio license HQV6767, backing into the driveway at 666 Steiner Ave. Cincinnati, Ohio, which is a three-car garage and a known stash house for HARVEY. While at 666 Steiner Ave., HARVEY was

observed walking out of the garage on the phone, while investigators were simultaneously listening to CHS1's audio transmitter. HARVEY was confirming with CHS1 the meet location. HARVEY shut the garage door and entered the silver 2011 Dodge Durango bearing Ohio license HQV6767 and was followed directly to the meet location. HARVEY sold CHS1 an amount of fentanyl in exchange for the recorded official funds inside of the Durango. Immediately after the transaction, HARVEY was followed by investigators directly back to his residence where he was observed pulling into the garage.

20. In the middle of July 2019, investigators used CHS1 to conduct another controlled purchase from HARVEY. CHS1 made a recorded Facetime call to HARVEY. HARVEY agreed to sell the CHS1 an amount of fentanyl. The CHS1 was provided with recorded U.S. currency to be used for the purchase of fentanyl. CHS1 met with HARVEY who was driving a maroon 2014 Honda Accord bearing Ohio license plate HOC5487. HARVEY sold CHS1 an amount of fentanyl in exchange for the recorded official funds inside of the 2014 Honda Accord. Surveillance units observed HARVEY driving the Honda Accord immediately following the transaction.

21. In the middle of September 2019, investigators used CHS1 to conduct another controlled purchase from HARVEY. CHS1 made a recorded Facetime call to HARVEY. HARVEY agreed to sell the CHS1 an amount of fentanyl. The CHS1 was provided with recorded U.S. currency to be used for the purchase of fentanyl. Surveillance units observed HARVEY, who was driving a white 2012 Honda Accord bearing Ohio license GQE7158, meet with CHS1 to conduct the transaction. CHS1 entered the Honda Accord, and HARVEY sold CHS1 an amount of fentanyl in exchange for the recorded official funds.

22. In the beginning of January 2020, investigators used CHS1 to conduct another controlled purchase from HARVEY. CHS1 made a recorded Facetime call to HARVEY.

HARVEY agreed to sell the CHS1 an amount of fentanyl. The CHS1 was provided with recorded U.S. currency to be used for the purchase of fentanyl. While the CHS1 was en-route to meet HARVEY, investigators observed a silver 2011 Dodge Durango bearing Ohio license HQV6767 back out of the garage of the residence. The same Durango was observed, via pole camera surveillance, minutes later parking in front of 666 Steiner Ave. HARVEY exited the driver's seat of the Durango and appeared to use a remote key pad to open the garage. HARVEY entered 666 Steiner Ave, and approximately ten minutes later, exited, shut the garage, and got back into the Durango. Investigators then followed HARVEY in the Durango to the pre-determined meeting location with CHS1. While under surveillance by investigators, HARVEY sold CHS1 an amount of fentanyl. Immediately after the transaction, investigators followed HARVEY directly back to 666 Steiner Ave. where HARVEY once again used the remote key pad to enter the garage. Minutes later, HARVEY exited the garage, and the surveillance was terminated.

23. As stated above, since May 2019, CHS1 has made several controlled narcotics purchases from HARVEY at the direction of investigators. During these controlled purchases, HARVEY has utilized multiple vehicles in which to conduct these transactions. Investigators have also observed HARVEY operating these vehicles on a regular basis throughout the course of the investigation. These vehicles include the subject property: a 2011 Dodge Durango, Ohio license plate HQV6767, VIN: 1D4RE2GG9BC677236 in which a controlled documented drug transaction was conducted by law enforcement with a CHS1 on two separate occasions; a 2014 Honda Accord, Ohio license plate HOC5487, VIN: 1HGCR2F37EA137231 in which a controlled documented drug transaction was conducted by law enforcement with a CHS1 on two separate occasions; and a 2012 Honda Accord, Ohio license plate GQE7158, VIN: 1HGCP3F8XCA033904, in which a controlled documented drug transaction was conducted by law enforcement with a CHS1 on two

separate occasions.

24. Based on the foregoing, I assert there is probable cause to seize the subject property because the vehicles are subject to forfeiture to the United States, pursuant to 21 U.S.C. § 881(a)(4) (civil), 21 U.S.C. § 881(a)(6) (civil), and/or 21 U.S.C. § 853(a) (criminal), as property constituting, or derived from, proceeds obtained, directly or indirectly, as the result of one or more violations of 21 U.S.C. §§ 841 and 846; and/or as property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of such violations.

25. I seek a combination civil-criminal seizure warrant because the United States may pursue civil and/or criminal forfeiture of the subject property. With respect to seizure for criminal forfeiture, your affiant asserts that a restraining order under 21 U.S.C. § 853(e) may not be sufficient to assure the availability of the vehicles for forfeiture because they can be moved, hidden, encumbered, or the value can be dissipated while subject to a restraining order, but these actions will be more difficult if the vehicles are in the custody of the United States.

## REQUEST FOR SEALING

26. I request that the Court order that all papers in support of this application, including the affidavit and seizure warrant and any attachments, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all

of the targets of the investigation. Accordingly, these documents should be sealed because their premature disclosure may seriously jeopardize that investigation.

_____
Jason M. O'Brien
Task Force Officer
Federal Bureau of Investigation

Subscribed and sworn to before me on this __19__ day of February, 2020.

_____
HONORABLE KAREN L. LITKOVITZ
UNITED STATES MAGISTRATE JUDGE

11